## UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INFORMATION NO. CR414  392 |
| | ) | |
| V. | ) | |
| | ) | VIO: 18 U.S.C. § 371 (Conspiracy) |
| SULEYMA ARREOLA | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES ATTORNEY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Information:

### Georgia's Women, Infant and Children's Program ("WIC")

1.      Georgia's Women, Infant, and Children ("WIC") program provides supplemental food, health care referrals, and nutrition for low-income pregnant and postpartum women, and to infants and children up to age five who are nutritionally at risk. The WIC program provides infant formula, infant and adult cereal, juice, eggs, milk, bread, cheese, peanut butter, fresh fruits and vegetables, and dried beans or peas. The WIC program is funded and administered through the United States Department of Agriculture's ("USDA") Food and Nutrition Services Division. The Georgia Department of Community Health ("DCH")(now known as the Georgia Department of Public Health) administers the WIC program at the state level.

2.      In order to participate in WIC, a retail grocery vendor must submit a signed application for Vendor Authorization.  Every owner with 5% or more financial interest in the grocery store must be listed in the application.   Authorized vendors in the WIC program may only accept and redeem WIC vouchers in connection with the sale of eligible WIC items specifically described on each WIC food voucher.  WIC vouchers cannot be purchased or sold in exchange for cash.   Vendors are prohibited from substituting WIC eligible foods with ineligible foods and from delivering WIC food items.  Vendors may not accept vouchers before or after the 30-day period during which the WIC vouchers are marked valid.  Each participating store owner or representative must sign a form attesting to his or her understanding of the WIC rules and regulations.

3.      Once approved to participate in WIC, a grocery store is issued a unique 4-digit vendor number.  The grocery store will receive a stamp that is embossed with their vendor number along with the wording "GA WIC VENDOR."  WIC vendors agree that WIC vouchers will only be accepted at an authorized store and that WIC vouchers will not be transferred between stores.

4.      When a WIC program participant or guardian of a participant uses a WIC voucher at an authorized grocery store, the store must verify that the participant is only buying the listed items on the voucher.  A store representative must fill out the amount of WIC items actually purchased, the date of purchase, and the total price on each WIC voucher before having the participant or guardian verify the information and sign each WIC voucher at the point of sale.  Failure to properly fill out the required information prior to obtaining the customer's signature renders the WIC voucher void.   Before an authorized store can deposit a WIC voucher, the store must stamp the front of the voucher with their unique vendor stamp.  The WIC voucher is then

2

deposited into a designated store bank account, just like a regular check. Once deposited with the required information, the vouchers may then be funded by the WIC program.

### The Supplemental Nutrition Assistance Program ("SNAP")

5.      The Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program, is a program also funded and administered through the USDA. Its purpose is to alleviate hunger and malnutrition among low-income families by providing "food stamp" benefits. These food stamp benefits are provided to recipients through Electronic Benefit Transfer ("EBT") cards, which are similar to debit cards. Recipients use the EBT cards to purchase eligible food items at approved retail stores, and the amount of the purchase is then debited from that recipient's SNAP benefit account. Recipients may not use their EBT card to purchase non-food items nor to obtain cash.

6.      For a retail store to become authorized to participate in SNAP, the business owner or representative must apply with the USDA's Food and Nutrition Service. Applicants are instructed and cautioned that EBT cards can be accepted and redeemed only in connection with the sale of eligible food items. Participating stores are prohibited from debiting food stamp benefit accounts for the purchase of non-food items. Such stores are also prohibited from exchanging cash for food stamp benefits. Each participating store owner or representative must sign a form attesting to his or her understanding of the SNAP rules and regulations.

7.      When a recipient uses his or her EBT card in an authorized store, the store's point-of-sale terminal sends an electronic message to determine whether the card is funded. If the EBT card is funded, the store is notified electronically and is able to complete the SNAP transaction. Once completed, the point-of-sale terminal in the store sends another electronic message requesting payment. An entity acting on behalf of SNAP processes a debit to the SNAP

3

recipient's allotted funding and eventually a transfer of funds is wired into the store's bank account.

### The Stores

8.     The following stores applied for and received authorization by the USDA's Food and Nutrition Service to participate as retail stores in SNAP:

a.     Super Kids Variety Store, LLC, located at 302 West Victory Drive, Ste. E, Savannah, Georgia;

b.     Platinum Kids, LLC, located at 612 US Highway 80, West, Garden City, Georgia;

c.     Pink and Blue Variety Store, LLC, located at 3707 Houston Ave., Macon, Georgia;

d.     Wayne's World Variety Store, LLC, located at 804 Whitesville Street, Suite F, LaGrange, Georgia;

e.     Toddler World, LLC, located at 1394 Moreland Ave. SE, Atlanta, Georgia;

f.     Small Mart Variety Store, LLC, located at 819 A New Franklin Road, LaGrange, Georgia;

g.     Small Steps Variety Store, LLC, located at 2310 Cascade Road SW, Atlanta, Georgia;

h.     Babies of Elegance, LLC, located at 6124 Covington Highway, Lithonia, Georgia;

i.     Small World, LLC, located at 6504 Church Street, Suite #1, Riverdale, Georgia;

j.     Tiny Tots, located at 1038 Gray Highway, Macon, Georgia;

k.     Kids Paradise Variety Store, LLC (formerly Tiny Tots), located at 1977 South Cobb Drive SE, Ste. 270, Marietta, Georgia;

l.     Baby's and More, located at 5455 Riverdale Road, Atlanta, Georgia;

m.     Kreative Kids Variety Store, LLC, located at 5611 Riverdale Road C, College Park, Georgia;

n.     C and J Nutritional Variety Store, LLC, located at 7173 Covington Hwy. F1, Lithonia, Georgia;

o.     Star Babies Variety Store, LLC, located at 4812 B Redan Road, Stone Mountain, Georgia;

9.     From in or around December 2009 through December 2012, these stores redeemed over $1,000,000 in SNAP benefits.

10.     In addition to being authorized to participate in SNAP, the following stores applied for authorization and were authorized by DCH to participate as retail stores in WIC:

a.     Super Kids Variety Store, LLC;

b.     Pink and Blue Variety Store, LLC;

c.     Small World, LLC;

d.     Toddler World, LLC; and,

e.     Small Mart Variety Store, LLC.

11.     From in or around December 2009 through December 2012, these stores redeemed over $18,000,000 in WIC vouchers.

12.     All of the stores identified in this Information were owned and/or operated by members of the conspiracy, who were collectively involved in the illegal purchase of over $18,000,000 worth of WIC and SNAP benefits for cash.

## COUNT ONE

### 18 U.S.C. § 371

### Conspiracy to Commit Mail and Wire Fraud and Money Laundering

13.     Paragraphs 1 through 12 are incorporated by reference herein.

14.     Beginning in or around December 2009 and continuing through in or around December 2012, in Chatham, Bibb, Cobb, Clayton, DeKalb, Fulton, Monroe and Troup Counties, within the Southern, Northern and Middle Districts of Georgia, and elsewhere, the defendant:

## SULEYMA ARREOLA

being aided and abetted by others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, to commit offenses against the United States, that is:

    a.  to knowingly and willfully devise a scheme and artifice to defraud the WIC program and SNAP of money, and to obtain from the WIC program and SNAP money by means of false and fraudulent pretenses, representations, and promises, and to send or cause to be sent by commercial interstate carrier and U.S. Mail WIC vouchers and other items for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1341; and

    b.  to knowingly and willfully devise a scheme and artifice to defraud the WIC program and SNAP of money, and to obtain from the WIC program and SNAP money by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

    c.  To knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of specified unlawful activity, that is, wire fraud and mail fraud; with the intent to promote said specified unlawful activity; and knowing that the funds represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(I); and

d. To knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce involving the proceeds of specified unlawful activity, that is, wire fraud and mail fraud; knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity; and, knowing that the funds represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

e. To knowingly engage and attempt to engage in monetary transactions exceeding $10,000, which funds were derived from specified unlawful activity, that is, wire fraud and mail fraud; and knowing that the funds represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1957.

## Manner and Means of the Conspiracy

15. It was part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would seek to open purported grocery stores throughout the state of Georgia.

16. It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would apply to USDA Food and Nutrition Service as a purported grocery store, in an effort to become an authorized vendor in SNAP.

17. It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would apply to the DCH (now the Georgia Department of Public Health) as a purported grocery store, in an effort to become an authorized vendor in the WIC program.

18.     It was further part of the conspiracy that, once the purported grocery stores became authorized SNAP and/or WIC program vendors, some of the conspirators, aided and abetted by each other and others, would stock the stores with enough food items to pass inspections by the WIC program and SNAP, and to falsely appear that the stores were operating as legitimate grocery stores.

19.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would canvass neighborhoods throughout Georgia and solicit SNAP recipients and WIC participants to illegally sell their WIC and SNAP benefits for cash.

20.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would agree with WIC participants, the guardians of WIC participants, and with SNAP recipients to the exchange of WIC vouchers and SNAP benefits for cash at a fraction of the amount for which the vouchers and benefits could be redeemed.

21.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would withdraw cash from numerous bank accounts, which cash would be used to illegally purchase WIC vouchers and SNAP benefits.

22.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would purchase WIC vouchers and SNAP benefits for cash and at a fraction of the amount the defendants would eventually receive from the redemption of the benefits.

23.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would regularly and unlawfully exchange unauthorized items for WIC vouchers, and would unlawfully deliver items to WIC participants.

8

24.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would unlawfully pay cash to SNAP recipients in order to use their EBT benefits to stock the purported grocery stores.

25.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would hold frequent meetings to discuss, among other things: the cash amounts that would be paid for various WIC vouchers and for SNAP benefits; and, how to evade detection of their illegal activities from SNAP and the WIC program.

26.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would exchange WIC vouchers at stores that were not authorized to accept WIC vendors.

27.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would regularly deliver and send WIC vouchers to a central location, by commercial carrier, U.S. Mail, and otherwise.

28.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would make, and cause to be made, false and fabricated information upon WIC vouchers, which vouchers would then be deposited into various store bank accounts.

29.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would cause false and fabricated information to be communicated to SNAP in an effort to have SNAP fund transactions involving the unlawful exchange of SNAP benefits for cash.

30.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would create false receipts and other documents in an effort to hide their scheme and artifice upon the WIC program and SNAP.

31.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and others, would create an organization named WE IN CONTROL (WIC), which was used to pay and reward numerous coconspirators for their unlawful activities, and to receive and transfer large amounts of the proceeds of the scheme and artifice upon the WIC program and SNAP.

32.     It was part of the conspiracy that some members of the conspiracy, aided and abetted by each other and by others, would open bank accounts in Savannah, Macon, Columbus, Atlanta and elsewhere through which they would transfer funds obtained from their fraud upon from the WIC program and SNAP.

33.     It was further part of the conspiracy that some members of the conspiracy, aided and abetted by each other and by others, would conduct multiple financial transactions designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of their fraud upon the WIC program and SNAP and WIC.

34.     It was further part of the conspiracy some members of the conspiracy, aided and abetted by each other and by others, would use the illicit proceeds from their fraud upon the WIC program and SNAP to promote said unlawful activity by purchasing additional WIC vouchers illegally, paying for more EBT benefits and paying the operating and business expenses of the stores identified herein.

35.     It was a further part of the conspiracy some members of the conspiracy, aided and abetted by each other and others, would engage in transactions exceeding $10,000 in funds that were obtained from their fraud upon the WIC program and SNAP.

### Overt Acts of the Conspiracy

In furtherance of the conspiracy and to effect the objects thereof, members of the conspiracy, aided and abetted by each other and others, committed the following acts, among others:

36.     Members of the conspiracy opened purported grocery stores in Savannah, Garden City, Macon, LaGrange, Atlanta, Marietta, Lithonia, Riverdale and elsewhere.

37.     Members of the conspiracy applied to the USDA and to DCH to become authorized vendors of the WIC program and SNAP.

38.     Members of the conspiracy opened numerous bank accounts in the names of the purported grocery stores listed in the Information, in the name of We In Control, and in other names.

39.     Members of the conspiracy purchased WIC vouchers and SNAP benefits for cash at a fraction of the amount for which the benefits were redeemed by members of the conspiracy.

40.     Members of the conspiracy allowed the substitution of WIC eligible food items for non WIC eligible food items at the various purported grocery stores listed in the Information.

41.     Members of the conspiracy used recipient EBT cards to stock purported grocery stores with enough food items to insure that the stores would pass WIC program and SNAP inspections.

42.     Members of the conspiracy from across the state attended meetings in person, via Skype, and through other means.

43.     Members of the conspiracy sent and delivered WIC vouchers by mail, commercial carrier and otherwise to central locations so that the vouchers could be processed with false and fabricated information before deposit into bank accounts.

44.     Members of the conspiracy caused false and fabricated interstate electronic communications to be sent to SNAP in an effort to cause SNAP to fund fraudulent transactions.

45.     Members of the conspiracy opened bank accounts to conceal proceeds from the unlawful activity and to promote the activity.

All done in violation of Title 18, United States Code, Section 371.


James D. Durham**
First Assistant United States Attorney


Greg Gilluly, Jr.**
Assistant United States Attorney

                                        ** Denotes Lead Counsel